FILED
Jeffrey A. Apperson, Clerk
DEC 16 2009
U. S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA

v.

SUPERSEDING INDICTMENT

NO.   3:09CR-57-S
26 U.S.C. § 7201
26 U.S.C. § 7212(a)

**RICHARD GILBERT**

The Grand Jury charges:

## COUNT 1

That beginning on or about September 1, 2001, and continuing up and until at least March 30, 2009, in the Western District of Kentucky, Larue County, Kentucky, **RICHARD GILBERT**, did willfully attempt to evade and defeat the payment of a large part of the income taxes assessed due and owing by him to the United States of America which were assessed on June 23, 2003, for the calendar years 1999 and 2000 and assessed on May 7, 2007, for the calendar years 2001, 2002, and 2003, by committing, among others, the following affirmative acts of evasion:

    A.    **RICHARD GILBERT** failed to file individual income tax returns with the Internal Revenue Service (IRS) for the calendar years 1999 through 2007.

    B.    From in or about September 2001 through in or about January 2009 **RICHARD GILBERT** held title to his residence located at 1046 Old Elizabethtown Road, Hodgenville, Kentucky, in the name of "Electra 225."

"Electra 225" is an alter ego of **RICHARD GILBERT** used to conceal his ownership and control of real estate and other personal assets.

C. In or about January 2002, **RICHARD GILBERT**, while working as a chiropractor, stopped accepting check payments from insurance companies in order to avoid IRS Form 1099's from being filed in his name. Instead, he operated his business as a "cash based" business in order to conceal his income from the IRS.

D. From on or about August 5, 2003, through on or about January 18, 2007, **RICHARD GILBERT** fraudulently filed U.C.C. Financing Statements against himself. The documents listed "R.G. Gilbert and T.K. Gilbert" as the debtors. The documents represented that, among other things, assets he owned and controlled were encumbered with liens. On or about August 5, 2003, he filed with the Kentucky Secretary of State a UCC financing statement that falsely stated his assets were encumbered by liens. In addition, on or about January 18, 2007, he filed an addendum to the original UCC financing statement in which he falsely stated that he had paid his IRS liens.

E. In 2003 and 2004 **RICHARD GILBERT** fraudulently mailed multiple "Bills of Exchange" to the IRS that purported to represent payment of his assessed tax liabilities of calendar years 1999 and 2000. For example, in or about November 2003, **RICHARD GILBERT** mailed a fraudulent "Bill of Exchange" in the amount of $128,479.17 to the IRS. The document purported to be in

payment of his 1999 and 2000 assessed tax liability. The bill of exchange was not a valid negotiable instrument and was worthless.

F.   On or about January 13, 2004, **RICHARD GILBERT** mailed two notices of levy from the IRS, along with another fraudulent "Bill of Exchange" in the amount of $128,479.17 to the IRS service for tax years 1999 and 2000. **RICHARD GILBERT** placed a stamp on each document that falsely stated: "Accepted for assessed value and returned in exchange for settlement." He signed and dated each document September 29, 2003. The bill of exchange was not a valid negotiable instrument and was worthless.

G.   From in or about June 2004 until on or about January 2009, **RICHARD GILBERT** used an E Trade Securities LLC Account, account #6488-9251 in the name of "Electra 225 by Richard Gilbert" to pay his personal expenses. During this period he routinely used an ATM/debit card to make cash withdrawals from this account. "Electra 225" is an alter ego used by **RICHARD GILBERT** to conceal his income and assets.

H.   On or about October 21, 2004, an IRS Revenue Officer issued **RICHARD GILBERT** a summons for all his current financial records. In response to the summons, on or about February 9, 2006, **RICHARD GILBERT** falsely told the IRS Revenue Officer that he did not currently maintain any bank accounts and that his chiropractic business dealt strictly in cash. In addition, he failed to comply with the summons by providing his current bank account records. When in truth, and in fact, **RICHARD GILBERT** then maintained multiple bank accounts that he routinely used, including an E Trade Securities account in the

name of "Electra 225," an account with Puyallup Valley Bank, and an account with Harbor Stone Credit Union.

I.      From in or about February 2005 through in or about January 2007, **RICHARD GILBERT** fraudulently mailed to the IRS copies of a Notice of Federal Tax Lien, a Form 4549, a Revenue Agent's report, and past due tax notices for 1999 and 2000 issued to him by the IRS on which he falsely stamped words to the effect that the delinquent taxes should be charged to his Private UCC Contract Trust Account. The stamp was purportedly made by the Secretary of Treasury of this account. When in truth, and in fact, this was a non-existent account and **RICHARD GILBERT** never made a payment for this tax liability. In violation of Title 26, United States Code, Section 7201.

The Grand Jury further charges:

## COUNT 2

1.      Grand Jury realleges and incorporates by reference the allegations set forth in Count 1 as though fully set forth herein.

2.      That beginning on or about December 11, 2000, and continuing until at least January 1, 2008, in the Western District of Kentucky, Larue County, Kentucky, **RICHARD GILBERT** did corruptly endeavor to obstruct or impede the due administration of the Internal Revenue laws, to wit: **RICHARD GILBERT** corruptly endeavored to obstruct or impede the IRS and assessment and collection of his federal income taxes after being placed on notice in December of 2000 that the IRS was examining his 1999 tax return and after being placed on

notice in September of 2004 that IRS was beginning the process of collecting his previously assessed taxes and during the course of his corrupt endeavors he took, among others, the following actions:

    A.    In or about August 2002, **RICHARD GILBERT** fraudulently filed a complaint with the Department of Treasury Inspector General for Tax Administration claiming that an Ogden, Utah, IRS worker who previously assessed taxes on him had committed mail, fraud, extortion, and other crimes against him.

    B.    In 2003 and 2004, **RICHARD GILBERT** fraudulently mailed multiple "Bills of Exchange" to the IRS that purported to represent payment of his assessed tax liabilities for calendar years 1999 and 2000. For example, in or about November 2003, **RICHARD GILBERT** mailed a fraudulent "Bill of Exchange" in the amount of $128,479.17 to the IRS. The document purported to be in payment of his 1999 and 2000 assessed tax liability. The bill of exchange was not a valid negotiable instrument and was worthless.

    C.    On or about January 13, 2004, **RICHARD GILBERT** mailed two notices of levy from the IRS and a bill of exchange in the amount of $128,479.17 to the IRS for tax years 1999 and 2000. **RICHARD GILBERT** placed a stamp on each document that falsely stated: "Accepted for assessed value and returned in exchange for settlement." He signed and dated each document September 29, 2003. The bill of exchange was not a valid negotiable instrument and was worthless.

D. On or about October 21, 2004, an IRS Revenue Officer issued **RICHARD GILBERT** a summons for all his current financial records. In response to the summons, on or about February 9, 2006, **RICHARD GILBERT** falsely told the IRS Revenue Officer that he did not currently maintain any bank accounts and that his chiropractic business dealt strictly in cash. In addition, he failed to comply with the summons by not providing any current bank account records. When in truth, and in fact, **RICHARD GILBERT** then maintained multiple bank accounts that he routinely used, including an E Trade Securities account in the name of "Electra 225," an account with Puyallup Valley Bank, and an account with Harbor Stone Credit Union.

E. On or about February 10, 2005, **RICHARD GILBERT** fraudulently mailed to the IRS a copy of a Notice of Federal Tax Lien issued to him by the IRS on which he falsely stamped words to the effect that the delinquent taxes should be charged to his Private UCC Contract Trust Account. The stamp was purportedly made by the Secretary of Treasury. When in truth, and in fact, this was a non-existent account and **RICHARD GILBERT** never made a payment for this tax liability.

F. In or about June 2006, **RICHARD GILBERT** mailed a "Statement in Lieu of Tax Returns" for years 1995 through 2005 to the IRS Director of International Operations in which he and his wife falsely claimed to be a "non-resident aliens of the United States."

G. On or about July 14, 2006, **RICHARD GILBERT** fraudulently mailed to the IRS a copy of a Letter 950(D) issued to him by the IRS on which he falsely stamped words to the effect that the delinquent taxes should be charged to a Private UCC Contract Trust Account. The stamp was purportedly made by the Secretary of Treasury. When in truth, and in fact, this was a non-existent account and **RICHARD GILBERT** never made a payment for this tax liability.

H. On or about August 25, 2006, **RICHARD GILBERT** fraudulently mailed to the IRS a copy of a Form 4549 and a Revenue Agent's report issued to him by the IRS on which he falsely stamped words to the effect that the delinquent taxes should be charged to a Private UCC Contract Trust Account. The stamp was purportedly made by the Secretary of Treasury of this account. When in truth, and in fact, this was a non-existent account and **RICHARD GILBERT** never made a payment for this tax liability.

I. On or about November 1, 2006, **RICHARD GILBERT** provided to the Technical Support Manager of Field Office of IRS Fresno Office two signed "Commercial Affidavits" in which he falsely stated he received no income in 1999 through 2003 required to be reported to the IRS and, therefore, did not accrue the associated tax liability.

J. On or about July 2, 2007, **RICHARD GILBERT** provided to the Technical Support Manager of Field Office of IRS Cincinnati Office five signed "Commercial Affidavits" in which he stated he falsely stated he received no

income in 1999 and 2000 required to be reported to the IRS and, therefore, did not accrue the associated tax liability.

K.  On or about July 2, 2007, **RICHARD GILBERT** fraudulently mailed to the IRS copies of past due tax notices for 1999 and 2000 issued to him by the IRS on which he falsely stamped words to the effect that the delinquent taxes should be charged to a Private UCC Contract Trust Account. The stamp was purportedly made by the Secretary of Treasury. When in truth, and in fact, this was a non-existent account and **RICHARD GILBERT** never made a payment for this tax liability.

L.  On or about July 2, 2007, **RICHARD GILBERT** mailed a "Notice" to the Department of Treasury Inspector General for Tax Administration falsely claiming that IRS agents intend to fraudulently convert monies belonging to him.

M.  On or about July 25, 2007, **RICHARD GILBERT** mailed a "Notice" to The Treasury Inspector General, the Larue County Court Clerk, and

IRS employees stating they would face criminal and civil liabilities if they executed a federal tax lien on his assets.

In violation of Title 26, United States Code, Section 7212(a).

A TRUE BILL.

_____
FOREPERSON

*[signature]*
CANDACE G. HILL
UNITED STATES ATTORNEY

CGH:BRC:vlp:091215

UNITED STATES OF AMERICA v. **RICHARD GILBERT**

## PENALTIES

Count 1: NM 5 yrs./$250,000/both/NM 3 yrs. Supervised Release
Count 2: NM 3 yrs./$250,000/both/NM 1 yr. Supervised Release

## N O T I C E

**ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.**

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

Misdemeanor: $ 25 per count/individual        Felony: $100 per count/individual
             $125 per count/other                     $400 per count/other

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due immediately unless the court issues an order requiring payment by a date certain or sets out an installment schedule. You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court. 18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following:**

1. **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

   For offenses occurring after December 12, 1987:

   No **INTEREST** will accrue on fines under $2,500.00.

   **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing. This rate changes monthly. Interest accrues from the first business day following the two week period after the date a fine is imposed.

   **PENALTIES** of:

   10% of fine balance if payment more than 30 days late.

   15% of fine balance if payment more than 90 days late.

2. Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3. Continuous **GARNISHMENT** may apply until your fine is paid.

   18 U.S.C. §§ 3612, 3613

   If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both. 18 U.S.C. § 3615

## RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law. 18 U.S.C. § 3663

## APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

1. That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

2. Give bond for payment thereof.

18 U.S.C. § 3572(g)

## PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made payable to the Clerk, U.S. District Court and delivered to the appropriate division office listed below:

| | |
|---|---|
| LOUISVILLE: | Clerk, U.S. District Court<br>106 Gene Snyder U.S. Courthouse<br>601 West Broadway<br>Louisville, KY 40202<br>502/625-3500 |
| BOWLING GREEN: | Clerk, U.S. District Court<br>120 Federal Building<br>241 East Main Street<br>Bowling Green, KY 42101<br>270/393-2500 |
| OWENSBORO: | Clerk, U.S. District Court<br>126 Federal Building<br>423 Frederica<br>Owensboro, KY 42301<br>270/689-4400 |
| PADUCAH: | Clerk, U.S. District Court<br>127 Federal Building<br>501 Broadway<br>Paducah, KY 42001<br>270/415-6400 |

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.

11

FORM DBD-34
JUN.85

No. 3:09CR-57-S

# UNITED STATES DISTRICT COURT
Western District of Kentucky
Louisville Division

THE UNITED STATES OF AMERICA
vs.
RICHARD GILBERT

**FILED**
Jeffrey A. Apperson, Clerk

DEC 16 2009

U. S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

**SUPERSEDING INDICTMENT**
Title 26 U.S.C. §§ 7201; 7212(a):
Tax Evasion; Endeavor to Obstruct or Impede
the Due Administration of Internal Revenue
Laws.

*A true bill*

_____,                              _____
                                                      Foreman

*Filed in open court this 16th day, of December A.D. 2009.*

_____
                                          Clerk

*Bail, $*